UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARCELINO JIMENEZ,

                                    Plaintiff,         **ACTION UNDER 29 U.S.C.§ 216(b)**

  -v.-                                                 **COMPLAINT**

SQUARE FOOD & CAFE INC.
(DBA SQUARE FOOD MARKET)
and ISMAEL DOE, Individually,

                                  Defendants
-----------------------------------------------------------X

Plaintiff MARCELINO JIMENEZ, hereinafter referred to as the "Plaintiff," for himself and on behalf of all others similarly situated, by and through his counsel, STILLMAN LEGAL PC., brings this Action on behalf of himself and other similarly situated employees of Defendant SQUARE FOOD & CAFE INC., doing business as SQUARE FOOD MARKET, hereinafter referred to as "Corporate Defendant," and Defendant ISMAEL DOE, hereinafter referred to as "Individual Defendant," in his capacity as owner and operator of SQUARE FOOD & CAFE INC. Both the Corporate and Individual Defendants are collectively referred to as the "Defendants." This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 USC §§ 201 et seq., the New York Labor Law ("NYLL") § 650 et seq., as recently amended by the Wage Theft Prevention Act ("WTPA"), NYLL § 195(3), NYLL § 191, and related provisions from Title 12 of New York Codes, Rules, and Regulations ("NYCRR"). The following allegations are based upon information and belief:

## NATURE OF THE ACTION

1. This Complaint aims to recover, among other things, unpaid overtime wage compensation for the Plaintiff, who was formerly employed by the Corporate Defendant,

a New York Corporation with its primary place of business at 253 E 149th St, Bronx, NY 10451. The Individual Defendant, a principal of the Corporate Defendant, played a significant role in the operational aspects of the business. In his role as a cashier with the Corporate Defendant, the Plaintiff was primarily responsible for customer payments and the cash register. These tasks often required him to work beyond the standard 40-hour workweek, without receiving the legally mandated overtime compensation.

2. Throughout the entire period of the Plaintiff's employment, Defendants were required, under relevant New York State law, to compensate Plaintiff with overtime pay at one and one-half the regular rate for work in excess of forty (40) hours per work week. The Defendants willfully failed to meet this requirement.

3. However, despite such mandatory pay obligations, Defendants willfully compensated Plaintiff only at a flat rate of $16 per hour. They intentionally failed to pay the Plaintiff the lawful overtime compensation of one and a half times his regular rate for the period from August 2022 until April 2, 2024, during which he consistently worked in excess of forty (40) hours per workweek, specifically working an average 57 hours per week.

4. The unlawful conduct of the Defendants had a detrimental impact not only on the Plaintiff but also on all other employees who were in a similar employment situation. This conduct was not an isolated incident but was part of a broader, systematic policy, implemented with willful intent, where the Defendants required the Plaintiff and other employees to work extensive hours. Despite this, the Defendants failed to provide the legally mandated overtime compensation as per federal and state law and regulations. This policy resulted in significant economic harm to the Plaintiff and others similarly situated, causing financial strain and hardship, and potentially other negative consequences.

Plaintiff also brings this action under the Wage Theft Prevention Act for Defendants' willful failure to provide written notice of wage rates, which is a clear and intentional violation of the WTPA. This negligent action by the Defendants resulted in the Plaintiff being uninformed about his entitled wages and overtime rates. This lack of information directly resulted in the Plaintiff's inability to assert his rights to proper compensation and contributed to the Defendants' ability to exploit him by not paying the legally required overtime rates. This not only caused him substantial financial loss, but also psychological distress and uncertainty regarding his rights and entitlements. This constitutes an injury in fact, as the Plaintiff suffered a concrete and particularized harm that is directly traceable to the Defendants' violation of the WTPA, and is not a mere procedural violation. This injury in fact is crucial to our client's standing to sue under Article III of the Constitution.

6. Accordingly, Plaintiff now brings this Action on behalf of himself and those other similarly situated individuals, for federal and state claims relating to unpaid overtime wages and unpaid spread-of-hours wages, pursuant to the FLSA, 29 USC §§ 201 et seq., NYLL § 650 et seq., as recently amended by the WTPA, NYLL § 195(3), as well as those related provisions in Title 12 of the NYCRR. These claims are brought against the Defendants for their willful and intentional violation of the aforementioned laws.

7. In connection therewith, Plaintiff seeks compensatory damages, liquidated damages, spread of hours pay, pre-judgment and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA and NYLL.

8. Plaintiff further seeks certification of this action as a collective action on his own behalf and on behalf of all others similarly situated pursuant to the collective action provision of the Fair Labor Standards Act, 29 U.S.C.§ 216(b).

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 USC § 1331, 29 USC §§ 216(b)(c), and 217; and 28 USC § 1337.

10. This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction pursuant to 28 USC § 1367.

11. This Court is empowered to issue a declaratory judgment pursuant to 28 USC §§ 2201 and 2202.

12. Venue is proper in the Southern District of New York, pursuant 28 USC § 1391(b)(c) because Corporate Defendants reside in this District, Plaintiff resides in this District, and because all or a substantial part of the events or omissions giving rise to the claims occurred herein.

## PARTIES

**Plaintiff**

13. Plaintiff MARCELINO JIMENEZ ("JIMENEZ") is and was at all times relevant hereto an individual residing in the county of Bronx, in the City and State of New York.

14. Plaintiff JIMENEZ was employed by SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET), a New York Corporation, at its offices at 253 E 149th St, Bronx, NY 10451, from approximately August 2022 until April 2, 2024, where his primary work duty was as a cashier, the Plaintiff was primarily responsible for customer payments and the cash register.

15. At all times relevant hereto, Plaintiff JIMENEZ was a covered employee within the meaning of the FLSA and the NYLL.

16. Plaintiff consents to being named a party herein, pursuant to 29 USC § 216(b), and brings these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 USC § 216(b).

**Defendants**

17. Defendant SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET) is, upon information and belief, a duly organized New York Corporation with its principal place of business located at 253 E 149th St, Bronx, NY 10451.

18. Upon information and belief, Defendant SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET) is engaged in interstate commerce, in that they rely heavily on products that have been transported across state lines and generate annual gross revenues in excess of $500,000 per year, independent of excise taxes, for 2024, and were directly engaged in interstate commerce.

19. Upon information and belief, Defendant ISMAEL DOE is the President, Chief Executive Officer, manager, principal, or agent of Defendant SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET).

20. Upon information and belief, and at all times relevant to the claims herein, Defendant ISMAEL DOE possessed operational control over Defendant SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET) by reason of their ownership interest, and control of significant functions of Defendant Corporations. For instance, ISMAEL DOE personally hired Plaintiff Marcelino Jimenez in August 2022, and terminated him on April 2, 2024. Throughout Marcelino's employment, ISMAEL DOE set a rigorous work schedule which consistently required him to work an average of 57 hours per week. ISMAEL DOE also gave Marcelino daily work orders and was responsible for any disciplinary actions that occurred during Marcelino's employment. Specific evidence of this control includes: (i) ISMAEL DOE was consistently referred to as "Boss" by Plaintiff and the other similarly situated employees; (ii) ISMAEL DOE personally determined the wages and compensation of the employees, including Plaintiff, and can be evidenced by pay stubs and wage records; (iii) ISMAEL DOE directly established Plaintiff's and other

employees' work schedules and workload, as demonstrated by work schedules and employee testimonies; (iv) ISMAEL DOE maintained employee records, which can be verified by human resources documentation; (v) ISMAEL DOE personally paid Plaintiff and the other employees their weekly wages, as evidenced by payment records; (vi) ISMAEL DOE possessed the authority to hire and fire employees, as evidenced by employment and termination records; (vii) ISMAEL DOE regularly gave daily orders to the Plaintiff and other employees, which can be corroborated by employee testimonies; and (viii) ISMAEL DOE had the authority to discipline employees, including the Plaintiff, as can be evidenced by disciplinary records and employee testimonies.

21. Defendant ISMAEL DOE acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2.

## COMMON FACTUAL ALLEGATIONS
Defendants are Considered Joint Employers

22. Defendants owned and operated SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET), corporate entities principally engaged in Bronx, New York. At all relevant times, Defendants SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET) and ISMAEL DOE possessed operational control over the Defendant Corporations, possessed an ownership interest in the Defendant Corporations, and/or controlled significant functions of Defendant Corporations. Specifically, ISMAEL DOE was in charge of hiring and firing employees, setting their work schedules, issuing daily orders, and disciplining staff members, which included the Plaintiff MARCELINO JIMENEZ.

23. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiff MARCELINO JIMENEZ and the other class member

employees by engaging in a pattern and/or policy of violating the FLSA. This pattern and/or policy includes, inter alia, the following:

   a. failing to pay employees the applicable overtime rate (one and one-half the rate of regular pay) for work performed in excess of forty (40) hours per week

   b. Defendants systematically failed to provide the Plaintiff, as well as other employees similarly situated, with statutorily required wage and hour records or accurate statements of pay. This deliberate omission was designed to obscure the Defendants' repeated violations of wage and hour laws and exploit the Plaintiff and other employees' limited familiarity with such laws. The absence of these records significantly obstructed the Plaintiff's ability to track his hours worked and calculate proper pay, thereby causing direct financial injury to the Plaintiff, which constitutes an injury in fact under the Wage Theft Prevention Act (WTPA)..

24. Defendants, as part of an intentional and systematic corporate policy designed to reduce labor costs, have unlawfully denied employees, including MARCELINO JIMENEZ and others similarly situated, their rightful compensation. This includes not only legally mandated overtime pay but also other benefits required by law. This was not an occasional oversight but a purposeful and willful practice carried out with full knowledge of its illegality, causing significant financial harm to the Plaintiff and other employees. This is not a mere oversight, but rather a calculated, intentional, and willful conduct carried out in bad faith. The result of such conduct has been significant financial damage to Plaintiff MARCELINO JIMENEZ and the other class members, who have been denied their lawful wages and overtime pay, causing them undue hardship and distress. This constitutes an injury in fact under the Wage Theft Prevention Act (WTPA) as the Plaintiff suffered a direct and personal financial loss due to Defendants' violations.

25. Defendant SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET), under the direct supervision and authority of Defendant ISMAEL DOE, acted in the interest of the Defendants with respect to its employees. ISMAEL DOE personally conducted the hiring process for the Plaintiff MARCELINO JIMENEZ, making the final decision to hire him. He also personally orchestrated the termination of MARCELINO JIMENEZ's contract on April 2, 2024, showing his direct control over hiring and firing decisions. ISMAEL DOE also set the work schedule for MARCELINO JIMENEZ, having him work an average of 57 hours per week, from 6:00 A.M. to 4:00 P.M. from Monday to Saturday. Each day, ISMAEL DOE gave specific orders to MARCELINO JIMENEZ and had the authority to discipline him, demonstrating his control over daily operations and disciplinary actions. Moreover, ISMAEL DOE directly determined the rate of pay and method of compensation for the Plaintiff, setting his hourly wage at $16.

26. During the period of Plaintiff's employment, Defendants SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET) and ISMAEL DOE possessed substantial control over Plaintiffs' and other similarly situated employees' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff and all similarly situated individuals, referred to herein.

27. Defendants SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET) and ISMAEL DOE jointly employed Plaintiff and all similarly situated individuals and are Plaintiff's and all similarly situated individuals' employers within the meaning of 29 USC 201 et seq. and the NYLL.

28. Defendants SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET) and ISMAEL DOE are considered as a single employer of Plaintiff and/or similarly situated individuals, as any business divisions between them appear to be merely nominal.

29. At all times relevant hereto, Defendants SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET) and ISMAEL DOE were Plaintiff's employers within the meaning of the FLSA, NYLL, and other applicable laws. Specifically, Defendant ISMAEL DOE hired the Plaintiff MARCELINO JIMENEZ, had the authority to fire him, controlled the terms and conditions of his employment, including setting his work schedule and issuing him daily orders. ISMAEL DOE also determined the rate and method of the Plaintiff's compensation. If necessary, ISMAEL DOE had the power to discipline the Plaintiff, further demonstrating his control over the Plaintiff's employment conditions.

**Plaintiff MARCELINO JIMENEZ**

30. Plaintiff was employed by Defendants from August 2022 until April 2, 2024. During his employment, Plaintiff JIMENEZ was stationed at the Defendants' facility located at 253 E 149th St, Bronx, NY 10451. His primary responsibilities included handling customer payments and managing the cash register as a cashier.

31. During the period in question, the Plaintiff worked a weekly schedule that covered Monday, Tuesday, Wednesday, Thursday, Friday, and Saturday, with a schedule that extended from 6:00 A.M. to 4:00 P.M. The weekly total working time was fifty-seven (57) hours. The Plaintiff had a thirty-minute lunch break each day.

32. From August 15, 2022, until December 31, 2022, Plaintiff was paid $16 per hour. Considering the overtime hours worked by the Plaintiff, he was underpaid by $136 per week. Consequently, the total underpayment for this period, excluding interest and statutory penalties, amounted to $2,720. From January 1, 2023, until December 31, 2023, Plaintiff was being paid $16 per hour, the underpayment per week was $136, and the total underpayment of that period of time was $7,072. From January 1, 2024, until April 2, 2024, Plaintiff was being paid $16 per hour, the underpayment per week was $136, and the total underpayment of that period of

time was $1,768. The total amount of unpaid wages, excluding interest and statutory penalties, is approximately $11,560.

33. Plaintiff JIMENEZ did not work at his own convenience but was required to report to work in accordance with a work schedule devised by Defendant ISMAEL DOE. Once scheduled for a shift, Plaintiff JIMENEZ did not have the liberty to come and go at his pleasure but was under the direct control of Defendant ISMAEL DOE, who dictated his work hours, break times, and tasks for each shift.

34. Plaintiff JIMENEZ was a covered employee within the scope of the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL). His position and duties did not fall into the category of "professional," "executive," or "administrative" roles which would exempt him from these laws. His work did not involve the use of discretion or independent judgment, further reinforcing that he was not exempt and was, therefore, entitled to the protections and benefits under the FLSA and NYLL. Plaintiff JIMENEZ's work is properly characterized as menial physical labor.

35. Plaintiff JIMENEZ regularly handled goods in interstate commerce and other items produced outside of the State of New York.

36. Plaintiff, MARCELINO JIMENEZ, was not compensated with appropriate overtime wages for the entire duration of his employment with the Defendants.

37. No notification, either in the form of posted notices or other means, was ever given to Plaintiff JIMENEZ regarding wages as required under the FLSA and NYLL.

38. Defendants failed to provide Plaintiff JIMENEZ with an accurate wage statement accompanying each payment of wages, as mandated by NYLL 195(3).

39. Defendants never provided Plaintiff JIMENEZ with written notice of his rate of pay, employer's regular payday, and such other information as required by NYLL §195(1).

**Defendants' General Employment Practices and Specific Instances of**

**<u>Violations</u>**

40. As part of their standard business practices, Defendants required Plaintiff MARCELINO JIMENEZ to work extended hours beyond the standard 40 hours per week. However, Defendants failed to compensate the Plaintiff with the appropriate overtime wages mandated by federal and state laws, namely the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL).

41. Through these common policies and practices, Defendants violated Plaintiff's rights under the FLSA and New York Labor Law, neglecting to pay him the wages he rightfully earned for the hours he worked.

42. Defendants systematically failed to comply with statutory requirements to post wage and hour posters and provide Plaintiff MARCELINO JIMENEZ with accurate wage and hour records or statements of pay. This failure caused Plaintiff JIMENEZ to suffer an injury in fact, as he was unable to verify the accuracy of his wages and thus suffered financial loss. This omission, which was designed to conceal Defendants' violations of wage and hour laws, exploited Plaintiff's lack of familiarity with these laws, resulting in significant financial harm to the Plaintiff.

43. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff worked, and to avoid paying Plaintiff properly for (i) his full hours worked, and (ii) overtime wages.

44. Under the New York Labor Law (NYLL) and the Wage Theft Prevention Act (WTPA), it is a legal requirement for employers to provide all employees with written notice detailing their wage rates, including overtime rates, at the time of their hiring. This did not occur when ISMAEL DOE hired the Plaintiff, MARCELINO JIMENEZ. Furthermore, whenever there is a change in these rates or other conditions affecting wages, the employer is legally obligated to update the employees with a written notice.

This ensures the employees' right to be informed and the transparency of their compensation structure. However, ISMAEL DOE did not adhere to this requirement during the Plaintiff's employment.

45. Throughout the relevant time period, Defendants paid Plaintiff MARCELINO JIMENEZ wages without providing an accurate accompanying wage statement and/or annual pay notices required under NYLL §§195(1) and 195(3). The failure of the Defendants to provide such necessary documents caused the Plaintiff to suffer an injury in fact, as he was unable to fully understand his pay structure and thus incurred significant financial loss..

46. Defendants systematically failed to provide Plaintiff MARCELINO JIMENEZ with <u>accurate</u> accompanying wage statements at the time of payment of wages. These statements should have included, as required by NYLL §195(3), the dates of work covered by that payment of wages; the name of the employee; the name, address, and phone number of the employer; the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked. This failure, which we allege to be willful, resulted in the Plaintiff's inability to verify the accuracy of his compensation, leading to substantial financial loss.

## **FIRST CAUSE OF ACTION**
**(Violation of FLSA Overtime Wage)**

47. Plaintiff hereby reiterates and incorporates by reference all the allegations and claims made in the preceding paragraphs as if they were fully set forth at this point in the document.

48. Throughout the entire period of the Plaintiff's employment, spanning from August 2022 to April 2, 2024, Defendants, specifically Defendant ISMAEL DOE, were Plaintiff's employers as defined by the Fair Labor Standards Act, 29 USC § 203(d). Defendant ISMAEL DOE, referred to as "Boss" by the Plaintiff and other employees, personally had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for his employment. Evidence of Defendant ISMAEL DOE's hiring and termination practices can be found in employment and termination records held by the Defendant. Defendants had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for his employment. This control was exhibited in a multitude of ways, including but not limited to: setting the Plaintiff's work schedule – with evidence found in work schedules maintained by the Defendant; giving Plaintiff daily orders and tasks – as corroborated by testimonies from the Plaintiff and other similarly situated employees; disciplining the Plaintiff when necessary – as evidenced by disciplinary records maintained by Defendant and stress-related medical records of the Plaintiff; and making decisions regarding his rate of pay and the method of its calculation – as evidenced by pay stubs and wage records. All these actions demonstrate the Defendants' comprehensive control over the Plaintiff's work conditions, thereby establishing them as his employers as per the definition in the Fair Labor Standards Act.

49. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce, and as such constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 USC § 203 (r-s).

50. Defendants, in violation of the FLSA, willfully failed to pay Plaintiff the applicable overtime compensation at rates of one and one-half times the regular rate of

pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C.§ 207 (a)(1).

51. Defendants' failure to pay Plaintiff the applicable overtime wage was not a mere oversight but a willful violation within the meaning of 29 U.S.C.§ 255(a), reflecting an intentional disregard for the law and the rights of the Plaintiff.

52. Defendants, despite their full knowledge and understanding, intentionally and willfully violated the FLSA's requirements. This includes their failure to pay legally mandated overtime rates, thereby obscuring the extent of their violations. This willful violation caused an injury in fact for the Plaintiff, leading to substantial financial loss due to unpaid overtime compensation.

53. Plaintiff (and the FLSA class members) seeks damages for his unpaid lawful overtime wages, liquidated damages as provided by the FLSA for wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper. The total amount of damages, including unpaid wages, liquidated damages, attorneys' fees, and costs, is to be determined at trial.

## SECOND CAUSE OF ACTION
**(Unpaid Overtime Wages Under New York Labor Law)**

54. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

55. Defendants, in willful violation of the NYLL § 190 *et seq.* and associated rules and regulations, systematically failed to pay Plaintiff the applicable overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek. This failure has resulted in significant financial harm to the Plaintiff.

56. Defendants' failure to pay Plaintiff overtime wage was willful within the meaning

of N.Y.Lab.Law § 663.

57. As a direct consequence of the Defendants' intentional, deliberate, and egregious violations of the New York Labor Law (NYLL), the Plaintiff, MARCELINO JIMENEZ, has experienced significant financial hardship. This hardship extends beyond lost wages and into areas such as increased living expenses, the inability to meet financial obligations, and added stress and anxiety. The Plaintiff is therefore entitled to recover from the Defendants not only his unpaid overtime wages but also liquidated damages as stipulated by the NYLL. Furthermore, the Plaintiff is entitled to the reimbursement of reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and any other damages permissible under NYLL, all of which have been incurred as a direct consequence of the Defendants' unlawful actions.

## THIRD CAUSE OF ACTION
### New York Labor Law – Failure to Provide Notice at Time of Hiring

58. Plaintiff reasserts and incorporates by reference all preceding allegations and claims, providing a foundation for the subsequent cause of action related to Defendants' willful failure to provide a compliant hiring notice as mandated under NYLL.

59. The Defendants, failing in their legal obligations, neglected to provide the Plaintiff with a comprehensive notice outlining his compensation structure at the time of hiring and at all subsequent points during his employment. This willful lack of notice caused an injury in fact to the Plaintiff as he was unable to make informed decisions about his employment and his rights, thereby suffering financial loss. This injury is not merely procedural but has caused actual harm to the Plaintiff, resulting in substantial financial loss and emotional distress, including but not limited to invest or apply for a mortgage. This notice should have included details such as his rate of pay, the method

of calculating pay, the designated payday, the physical address of the employer, and contact information. Crucially, the Defendants failed to provide any such notice even when there were changes to the Plaintiff's compensation structure or job role throughout his tenure, which further exacerbated the violation of NYLL § 195(1). This includes the rate of pay and the basis thereof, whether it be hourly, shift-based, daily, weekly, salary, piecework, commission-based, or otherwise; the regular payday as designated by the employer; the physical address of the employer's primary office or main place of business; the employer's telephone number, and any other information mandated by law. This omission constitutes a clear violation of NYLL § 195(1).

60. Due to Defendants' willful violations of the NYLL § 195(1), Plaintiff is entitled to recover from Defendants statutory damages of Fifty dollars ($50) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000) pursuant to NYLL § 198 (1-b). These violations, including the failure to provide notice of any changes to the Plaintiff's work schedule, payment rate, or job role, can be directly attributed to the Defendant ISMAEL DOE, who had the authority and responsibility to communicate such changes to the Plaintiff. Evidence of these violations can be found in the lack of documentation of such changes as required by NYLL § 195(1).

## FOURTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Accurate Wage Statements**

61. The Plaintiff hereby reiterates and incorporates by reference all the allegations and claims made in the preceding paragraphs as if they were fully set forth at this point in the document.

62. Defendants, in clear violation of NYLL § 195(3), have consistently and willfully failed to provide the Plaintiff with complete and accurate wage statements throughout his employment. This failure to provide accurate wage statements caused an injury in fact to

the Plaintiff as he could not effectively verify the accuracy of his wages and therefore suffered significant financial loss. This is not a mere procedural violation but resulted in concrete harm to the Plaintiff. These wage statements, which should have listed details including but not limited to regular and overtime hours worked, rate of pay, and the basis of pay calculation, were either incomplete, inaccurate, or in certain instances, not provided at all. This not only undermined the Plaintiff's ability to understand his compensation structure but also infringed his right to transparent and fair compensation as mandated by law.

63. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants' statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL § 198 (1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff MARCELINO JIMENEZ, having suffered considerable financial harm and emotional distress due to the intentional and willful violations of the FLSA and NYLL by Defendants SQUARE FOOD & CAFE INC. (DBA SQUARE FOOD MARKET) and ISMAEL DOE, respectfully requests that this Court enter judgment against the Defendants as follows:

    a. Designation of this action as a collective action on behalf of the FLSA Class Members (asserting FLSA claims and state claims) and prompt issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue

forms pursuant to 29 U.S.C. § 216(b);

    b.    Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiff;

    c.    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff;

    d.    Awarding Plaintiff liquidated damages in an amount equal to 100% of his damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C.§ 216(b);

    e.    Awarding Plaintiff damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

    f.    Awarding Plaintiff damages for the amount of unpaid overtime wages, damages for any improper deductions or credits taken against wages;

    g.    Awarding Plaintiff liquidated damages in an amount equal to one hundred percent (100%) of the total amount of overtime wage compensation shown to be owed pursuant to NYLL § 663 as applicable;

    h.    Awarding Plaintiff pre-judgment and post-judgment interest as applicable;

    i.    Awarding Plaintiff the expenses incurred in this action, including costs and attorney's fees; and

    j.    All such other and further relief as the Court deems just and proper, including but not limited to, compensation for any unjust

disciplinary actions taken by the Defendant against the Plaintiff, Marcelino Jimenez, during his employment.

    k.    An award of statutory damages for Defendants' willful failure to provide Plaintiff, Marcelino Jimenez, with wage notices at the time of his hiring by the direct order of the Defendant, or at any point thereafter, pursuant to NYLL § 198 (1-b);

    l.    An award of statutory damages for Defendants' willful failure to provide Plaintiff with complete and accurate wage statements pursuant to NYLL § 198 (1-d);

    m.    An award of pre-judgment interest of nine percent per annum (9%) pursuant to the New York Civil Practice Law and Rules §§ 5001-5004;

    n.    An award of post-judgment interest pursuant to 28 U.S.C. § 1961 and/or the New York Civil Practice Law and Rules § 5003;

    o.    Such other relief as this Court shall deem just and proper, including but not limited to any damages resulting from the Defendant's unilateral decision to terminate the employment of the Plaintiff, Marcelino Jimenez, without just cause or due process, and any damages resulting from the Defendant's control over the Plaintiff's work schedule and daily tasks.

Dated: New York, New York  
       May 2, 2024

                                     LINA STILLMAN, ESQ.

_____

Lina Stillman, Esq.
Attorneys for Plaintiff
Stillman Legal, P.C.
42 Broadway, 12th Floor
New York, New York 10004
Tel (212) 203-2417
www.StillmanLegalPC.com